

**SIGNED this 29 day of June, 2007.**

_____
**JOHN T. LANEY, III
UNITED STATES BANKRUPTCY JUDGE**
_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| E. MURRAY NEWLIN, | : | CASE NO. 04-41364 JTL |
| | : | |
| Debtor. | : | CHAPTER 7 |
| | : | |

_____

**MEMORANDUM OPINION**

This matter is before the court on the motion of Chapter 7 Trustee, Joy R. Webster ("Trustee"), to sell, under 11 U.S.C. § 363(b)(1), property of the estate consisting of Debtor E. Murray Newlin's ("Debtor") interest in a professional partnership known as Newlin & Winchester Partners to Debtor for $35,000.00. One of Debtor's creditors, Columbus Bank & Trust Co. ("CB&T"), filed an objection to the sale of the property and the Court held a hearing on December 4, 2006. Following the hearing, the Court took the motion and objection under advisement inviting the parties to submit supplemental briefs if they so chose. The ultimate issue before the Court is whether the proposed sale of Debtor's interest in the partnership, of which he is a member, for

$35,000.00, is in the best interest of the estate. Specifically raised by CB&T's objection, the Court must decide whether a withdrawal provision found in the partnership agreement requiring the remaining partner to purchase the withdrawing partner's partnership interest is enforceable by the Trustee against Debtor's remaining partner, Dr. James R. Winchester.

## **FINDINGS OF FACT**

On June 4, 2004, Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Code"). After having failed to file or even suggest a Chapter 11 plan of reorganization, Debtor voluntarily converted his case to one under Chapter 7 of the Code on March 2, 2006. Debtor received his Chapter 7 discharge on October 13, 2006. On the date of the original filing, Debtor owned a fifty percent (50%) interest in the Georgia general partnership known as Newlin & Winchester Partners ("Partnership" or "N&W"). N&W was established on April 1, 1999 by a written agreement ("Partnership Agreement") between Debtor and Dr. James R. Winchester ("Dr. Winchester"). N&W was formed as the result of the sale by Debtor to Winchester of a one-half interest in Debtor's dental practice. Dr. Winchester paid $347,500.00 to Debtor in exchange for this one-half interest in Debtor's dental practice. An independent appraiser hired by Debtor and Dr. Winchester determined the value paid by Dr. Winchester. In a separate transaction and for additional consideration, Debtor also sold or transferred to Winchester and Newlin, LLC the building that housed the dental practice. As of the petition date, Debtor owned no interest in Winchester and Newlin, LLC, therefore, neither this entity nor the real property it holds is the subject of the Trustee's current motion to sell. The value of the real property held by Winchester and Newlin, LLC, was not included in the sale of the one-half interest in Debtor's dental practice to Dr. Winchester.

Paragraph 16 of the Partnership Agreement governing the operation of N&W provides for

the withdrawal of a partner after fifteen (15) years of service to the partnership's practice. In subparagraph 16.E., the parties stipulated that Debtor began his service to the practice in 1978. The withdrawal provisions of the Partnership Agreement were, therefore, applicable to Debtor as of the petition date. The withdrawal provisions of the Partnership Agreement provide for the mandatory purchase of the withdrawing partner's interest in the partnership between one-hundred and eighty (180) days and two-hundred and forty (240) days following a notice of withdrawal. The price to be paid by the remaining partner is to be determined by a detailed formula set forth in the Partnership Agreement. The withdrawal provisions also provide for a two-year non-compete commitment by the withdrawing partner. There is no contingency provision in the Partnership Agreement triggered by the insolvency of one of the partners or a declaration of bankruptcy by one of the partners.

Either in March or May of 2006[1], the Trustee sent a letter to Dr. Winchester purporting to withdraw Debtor from the partnership and attempting to compel Dr. Winchester, as the remaining partner of N&W, to "buy-out" Debtor's share of the partnership in compliance with the withdrawal provisions of the Partnership Agreement. Debtor strongly opposed the Trustee's purported withdrawal and attempt to force a buy-out by Dr. Winchester. In response to Debtor's protest, the Trustee and the Debtor reached an agreement regarding the demands of the Trustee and Debtor's bankruptcy estate with respect to Debtor's partnership interest in N&W. The consensus reached was set forth in a written Settlement Agreement that was provided as an attachment to the Trustee's Motion to Sell Property of the Estate being considered by the Court today. As required by the

---

[*] For ease of identification, the Court has included in its citation to various pleadings filed with the Court, the docket number of that document as it appears in the Court's official docket of the case.

[1] It is unclear to the Court exactly which date the Trustee sent the letter to Dr. Winchester purporting to withdraw Debtor from the Partnership and demanding payment under the withdrawal provisions of the Partnership Agreement. Debtor provides on page 2 of his Response to Objection (doc. 117) that the Trustee sent the letter on or about May 23, 2006. Creditor CB&T provides in its Objection (doc. 114) at page 3 that the Trustee provided Dr. Winchester with a notice of withdrawal on March 2, 2006. The Court was unable to locate a copy of the letter to verify the date. The inconsistency is of no real consequence to the Court's inquiry.

Settlement Agreement, the Trustee filed its Motion to Sell on October 13, 2006, the date Debtor received his Chapter 7 discharge. The Motion proposes to settle the dispute between Debtor and the Trustee by selling any estate interest in the N&W partnership to Debtor for the sum of $35,000.00. There was no action taken by the Trustee to assume the Partnership Agreement.[2]

Paragraph 16.B. of the Partnership Agreement provides the formula for calculating the price to be paid to a withdrawing partner by way of a mandatory purchase after at least fifteen (15) years of service to the partnership. Under the provisions of that paragraph, the purchase price to be paid by the remaining partner shall equal the withdrawing partner's percentage interest in the partnership multiplied by the following:

(i) The value of the partnership's leasehold improvements and equipment (determined by appraisal), *plus*

(ii) The cost of dental supplies on hand *less* function obsolescence (determined by appraisal), *plus*

(iii) Ninety-six percent (96%) of the partnership's account receivables accrued within the past ninety (90) days, *plus*

(iv) The goodwill of the partnership—1.5 times the average total compensation paid to both Debtor and Dr. Winchester for the three-year period prior to the notice of withdrawal, *less*

(v) The total existing and contingent liabilities of the partnership.[3]

Payment may be made over time via 120 consecutive equal monthly payments of principal and interest set at the Prime Rate advertised by Citibank, or its successor, plus one percent (1%).

On March 1, 2002, Debtor provided Southtrust Bank with a sworn financial statement in

---

[2] Debtor's Response to Objection at 6 (doc. 117).

4

which he stated that his "Other ½ Dental Practice Value" was worth $630,000.00.[4] On March 10, 2004, Debtor filed an affidavit with the Superior Court of Muscogee County in which he stated that the value of his "one half ownership of dental practice" was $500,000.00.[5] In that affidavit, Debtor noted that his interest in the dental practice partnership is a non-transferable asset. Paragraph 19.D. of the Partnership Agreement provides that neither partner may assign the agreement without the prior written consent of the other party and that any assignment to the contrary shall be null and void.[6]

## DISCUSSION AND CONCLUSIONS OF LAW

Ultimately, the Court must determine whether the sale proposed by the Trustee is in the best interest of Debtor's bankruptcy estate. As part of this determination, the Court must decide whether the Trustee has the right to force Dr. Winchester, Debtor's dental practice partner, to purchase Debtor's interest in the N&W partnership in accordance with the mandatory purchase provisions of the Partnership Agreement. If the Trustee has the right to force such a purchase, then the Trustee's proposed sale of Debtor's interest in N&W for $35,000.00 would not be in the best interest of the estate considering the evidence as to the value that could be demanded under the withdrawal provisions of the Partnership Agreement. If however, it is determined that the Trustee does not have the right to force such a sale on Dr. Winchester, then the Court must decide whether the Trustee has carried her burden of proving that the sale as proposed is in the best interest of the bankruptcy estate.

    **A.    Trustee's Right to Force Mandatory Purchase**

Under the terms of the Partnership Agreement, which governs the operation of the N&W partnership to which Debtor is a member, a party who wishes to withdraw from the Partnership after

---

[3] Partnership Agreement at 7-9 (doc 114 exhibit 1).
[4] Southtrust Bank Financial Statement at 1 (doc. 114 exhibit 5).
[5] Affidavit of Debtor at 3 (doc 114 exhibit 6).

15 years of service has the right to require the remaining partner to buy-out the withdrawing partner's interest in the Partnership. The Partnership Agreement establishes a detailed procedure for determining exactly the price that the remaining partner must pay and the terms of that repayment. Creditor CB&T, recognizing that Debtor's interest in the N&W is the only asset of value in Debtor's bankruptcy estate, contends that the Trustee has the right under the Partnership Agreement to withdraw Debtor from the Partnership and force a purchase of Debtor's interest in N&W by Dr. Winchester in accordance with the provisions of the withdrawal section of the Partnership Agreement. CB&T contends that for the Trustee not to proceed to force the purchase would certainly mean a shortfall for Debtor's bankruptcy estate and, in turn, a shortfall for Debtor's creditors.

The Trustee did in fact pursue just such a course and by letter to Dr. Winchester purported to withdraw Debtor from the Partnership and demand purchase by Dr. Winchester of Debtor's partnership interest. Debtor opposed the demand and threatened the Trustee with prolonged litigation should she continue to press for a purchase by Dr. Winchester under the withdrawal provisions of the Partnership Agreement. Concerned that the threatened litigation would be costly to the estate and not believing the she had a likelihood of prevailing, the Trustee withdrew her demand and reached an agreement with Debtor to sell him his interest in the partnership for $35,000.00. Debtor acknowledges that "the Trustee may hold some interest in the economic value of the Partnership . . .," but not in the Partnership Agreement itself.[7] Debtor's position with regard to the proposed sale is that the sale would "judiciously" settle the dispute between the Trustee and the Debtor and that the price "is fair given the estimated cost associated with further litigation of the matter and the unlikelihood of any third party desiring to purchase an asset over which they have no

---

[6] Partnership Agreement at 13 (doc 114 exhibit 1).

[7] Debtor's Reply to Rebuttal of CB&T at 7 (doc. 120).

control (*i.e.*, no management capabilities)."[8]

In reaching a conclusion as to whether the Trustee has the right to act under the withdrawal provisions of the Partnership Agreement, the Court must establish whether the Partnership Agreement is an executory contract. Such a distinction will provide the rules necessary for the Court to apply in reaching its conclusion as to the Trustee's rights under the agreement. Specific provisions of the Bankruptcy Code apply where an executory contract is at issue.

Both parties cite to the case of *Cutler v. Cutler* (*In re Cutler*)[9] for instruction on how the Court should label the interests granted Debtor in and through the Partnership Agreement. The *Cutler* decision sets out a detailed and complete discussion of the nexus between state partnership law and the Bankruptcy Code and how the two bodies of law should be applied in the bankruptcy context. The Court finds *Cutler* to be persuasive and instructive on the issue of how to characterize the Partnership Agreement and the interests it creates. Citing the *Cutler* decision, Debtor states simply that courts have generally held that partnership agreements are executory contracts.[10] This is far too narrow a read of the *Cutler* decision being as that court avoided a narrow determination of the character of a partnership agreement and instead held that the partnership relationship should be viewed as "an amalgam of: (1) a property interest in the profit and surplus of the partnership, with the property interest surviving any termination of the agreement upon the partner's bankruptcy; and (2) an executory contract with respect to the governance of the partnership property."[11]

Unlike the facts in *Cutler*, the Court here is not required to consider the effect of "ipso facto" clauses in this Partnership Agreement. As such, there is no need for the Court to discuss Sections

---

[8] *Id.* at 8.
[9] 165 B.R. 275 (Bankr. D. Ariz. 1994).
[10] Debtor's Response to Objection at 4 (doc. 117).
[11] *Cutler*, 165 B.R. at 280.

365(e)(1) and (2) with regard to this case as is suggested by Debtor.[12] Considering that the Court has adopted the view of the court in *Cutler* that a partnership agreement should be characterized as an executory contract with regard to the governance of the partnership property, it is necessary for the Court to consider other provisions of § 365 of the Code that are generally applicable to executory contracts.

Initially, the Court was concerned, as was Debtor, with the assumability of the executory interests, or governance rights, of the Partnership Agreement by the Trustee. Section 365(c)(1) specifically prohibits the assumption of an executory contract by the Trustee where applicable law, *i.e.*, state law, excuses a party to the agreement, other than the debtor, from accepting performance from a stranger absent the consent of that party other than the debtor.[13] Whether § 365(c)(1) applies to prohibit the Trustee from assuming the Partnership Agreement is a complex question of law involving the oftentimes "tortuous interaction between the Bankruptcy Code, state partnership law, and a general partnership agreement . . . ."[14] Considering, however, another provision of that Section, § 365(d)(1), it became apparent to the Court that it was unnecessary to devote any discussion to § 365(c)(1) and its possible impact on the case. Section 365(d)(1) provides:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.[15]

It is undisputed that the Trustee did not act in the accorded 60-day period to assume the Partnership Agreement, at least as to the executory portions of that contract. Having established that the

---

[12] Debtor's Response to Objection at 4 (doc. 117).
[13] 11 U.S.C. § 365(c)(1) (2005).
[14] *Cutler*, 165 B.R. at 276.
[15] 11 U.S.C. § 365(d)(1) (2005).

Partnership Agreement is an executory contract at least so far as it pertains to the governance of the partnership, the Trustee was bound to comply with the provisions of § 365, including subsection (d)(1) and its time limitation.

Now, the question becomes what impact the Trustee's failure to assume the Partnership Agreement has on the rights of the Trustee to force a purchase, under the terms of the Partnership Agreement, of Debtor's interest in N&W by Dr. Winchester. CB&T contends that the mandatory purchase right as contained in the Partnership Agreement is not an incident of partnership governance, and therefore executory in nature, but rather, is part of Debtor's *property rights* in the partnership, therefore not subject to the executory contract limitations of § 365 and enforceable by the Trustee even without assumption of the Agreement.

In support of its position, CB&T argues (1) that the mandatory purchase right defines the ownership rights of the Debtor as to his interest in N&W and (2) that the exercise of the mandatory purchase right is related to the sale of a property right and not the management of the partnership.[16] The Court cannot move beyond the fact that the mandatory purchase right is a right established by the Partnership Agreement and the fact that it is a right reserved for an acting partner in the partnership to exercise. A right of the nature that "usually lies uniquely with a partner and not with an outsider"[17] should be deemed a managerial or governance right. As such, such a right arising under a partnership agreement would be subject to the executory contract limitations of § 365, and particular to this case, § 365(d)(1). Here, the mandatory purchase right arises under the Partnership Agreement and that agreement, to the extent it is an executory contract, was not assumed by the Trustee, if such assumption would have even been permissible under § 365(c)(1), within the 60-day time period provided for in § 365(d)(1). The Court cannot permit the enforcement of a partner's

---

[16] CB&T's Rebuttal Brief at 6-7 (doc. 119).

right that arises solely from a Partnership Agreement that has been deemed rejected by the Trustee. No such right would exist apart from the Partnership Agreement and such action taken under it would be wholly unenforceable.

### B. The Estate's Interest in the Partnership

As stated in *Cutler*, it is the duty of a Chapter 7 Trustee to "collect and reduce to money the property of the estate for which such Trustee serves."[18] Under § 363(b)(1), the Trustee has the power to sell property of the estate out of the ordinary course of business. Section 541(a)(1) of the Code provides that subject to certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case,"[19] becomes property of the bankruptcy estate. Here, Debtor's *property interest* in N&W is vested in the bankruptcy estate by operation of § 541(a)(1) and is subject to sale by the Trustee. Under Georgia law and the Partnership Agreement, Debtor's filing for bankruptcy protection did not terminate the partnership,[20] therefore, Debtor remains a member of the partnership with the abovementioned interests part of his bankruptcy estate. Debtor admits to the estate's holding a property interest in N&W in his brief where it is stated, in support of his own purchase of the estate's interest in N&W, that "Debtor acknowledges that the Trustee may hold some interest in the economic value of the Partnership (not the Partnership Agreement)."[21]

Having established that the Trustee has the duty of selling the estate's interest in N&W for the benefit of Debtor's creditors, it must be decided whether the Trustee has carried her burden of proving that the sale of that interest to Debtor for $35,000.00 is in the best interest of the estate. Although the Court cannot conclude, as CB&T suggests, that the mandatory purchase right set forth

---

[17] *Cutler*, 165 B.R. at 281.
[18] *Cutler*, 165 B.R. at 278 (citing 11 U.S.C. § 704(1)).
[19] 11 U.S.C. § 541(a)(1) (2005).
[20] O.C.G.A. § 14-8-31 (2003).
[21] Debtor's Reply to Rebuttal of CB&T at 7 (doc. 120).

10

in the Partnership Agreement is part and parcel of Debtor's *property interest* in the partnership, the Court does believe that the formula set forth in the Partnership Agreement for determining the price to be paid for a withdrawing partner's interest may be a good starting point for determining the value that should be paid for the estate's property interest in the partnership. The Court concedes that the figure arrived at by application of the formula may need to be adjusted on account of the special circumstances of this case, *i.e.*, a purchaser's lack of control, etc.

The Court cannot conclude that the Trustee has carried her burden of proving that the proposed sale to Debtor is in the best interest of the estate. It has not been adequately explained to the Court how the Trustee and Debtor arrived at a sale price of $35,000.00 considering the evidence that Debtor, in recent history, has stated that the value of his interest in the partnership was equal to or exceeded $500,000.00. Debtor, in support of his own desire to purchase the estate's property interest in N&W, has necessarily admitted that the Trustee holds an interest in the economic value of the partnership. The Trustee is charged with disposing of that asset of the estate in such a way that maximizes the value brought to the estate and therefore available for payment to Debtor's creditors. The Trustee has not convinced the Court that the $35,000.00 sale of Debtor's property interest in N&W is in the best interest of the estate. The Court is not, however, suggesting that a $35,000.00 sale price would never be acceptable. The Court is only stating that in consideration of the objection presented and the evidence currently before the Court, the Court cannot justifiably approve the proposed sale. The Court wishes that this matter could be disposed of in full with the issuance of this Opinion, but the evidence necessary for the Court to render a final decision on the sale has simply not been provided.

It should be mentioned, for the benefit of both parties as they consider this proposed sale, that the Court is not persuaded that the value of Debtor's property interest in N&W is destroyed or

even nearly destroyed by Debtor's withdrawal from the partnership. As was stated by CB&T, the mandatory purchase provision of the Partnership Agreement requires the sale of a withdrawing partner's interest in the partnership at a formulated purchase price and such purchase is transacted with the understanding that the withdrawing partner will no longer be a productive member of the partnership. The Court urges the Trustee to fully explore all options available with regard to the sale of Debtor's property interest in N&W being as that interest is the only asset that can produce value for the estate and thus for Debtor's creditors.

## **CONCLUSION**

Consistent with the foregoing discussion, the Court SUSTAINS the objection of Columbus Bank & Trust Co. to the Trustee's Motion to Sell Property of the Estate.